UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ERICA HARVEY-MITCHELL,

    Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 2:16-cv-01939 JRC

ORDER ON PLAINTIFF'S COMPLAINT

  This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed. *See* Dkt. 13, 14.

  Plaintiff had a baby in January 2013 and later developed postpartum cardiomyopathy ("PPCM"). *See, e.g.*, AR. 283. PPCM presents with symptoms of heart

failure secondary to left ventricular systolic dysfunction, such as shortness of breath and cardiomegaly (enlarged heart) and symptoms of acute renal failure. *See* Dkt. 14, pp. 3-5 (citing, *e.g.*, *Peripartum Cardiomyopathy,* Michael P. Carson, M.D., *Http://emedicine.medscape.com/article/153153-overview* (last visited August 21, 2017)). Plaintiff contends that the ALJ erred by failing to conclude that some of these symptoms were severe impairments and by failing to conclude that plaintiff's impairments met or medically equaled a Listed Impairment.

After considering and reviewing the record, the Court concludes that the ALJ did not commit any harmful error during the evaluation of plaintiff's Social Security application. Although plaintiff argues that the ALJ failed to conclude that some of her impairments were severe, plaintiff failed to carry her burden to demonstrate that any of these impairments were independent medically determinable impairments lasting for at least a year. For example, although plaintiff contends that the ALJ improperly failed to conclude that her shortness of breath was a severe impairment, the record shows that plaintiff's shortness of breath resolved within six months of her alleged onset date of disability. Similarly, regarding plaintiff's allegation regarding Listing 4.02, heart failure, plaintiff did not provide evidence demonstrating, as alleged, that her ejection fraction was 30 percent or less for more than six months from the date of alleged disability onset.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, ERICA LA TRESHIA HARVEY-MITCHELL, was born in 1977 and was 36 years old on the alleged date of disability onset of July 20, 2013. *See* AR. 22, 183-

86, 187-92. Plaintiff has at least a high school education and is able to communicate in English. *See* AR. 29. Plaintiff has experience working in child care centers. AR. 43-45.

According to the ALJ, plaintiff has at least the severe impairments of "history of postpartum cardiomyopathy and morbid obesity (20 CFR 404.1520(c) and 416.920(c))." AR. 24.

At the time of the hearing, plaintiff was living with her three children. AR. 48.

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 65, 66, 83, 84. Plaintiff's requested hearing was held before Administrative Law Judge Timothy Mangrum ("the ALJ") on December 23, 2014. *See* AR. 35-64. On June 5, 2015, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 19-34.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the Commissioner err in determining plaintiff's severe impairments; (2) Did the Commissioner err in determining that plaintiff did not meet or equal a medical listing; (3) Did the Commissioner err in evaluating plaintiff's residual functional capacity; and (4) Did the Commissioner err because the decision is not supported by substantial evidence. *See* Dkt. 13, p. 2.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Did the Commissioner err in determining plaintiff's severe impairments?**

Plaintiff contends that the ALJ erred at step two when considering plaintiff's severe impairments, arguing that the ALJ failed to consider whether plaintiff's other numerous impairments were severe, and therefore failed to account for any limitations based on those impairments. *See* Dkt. 13, pp. 5-7. Defendant contends that there is no error, and even if there is any error, it is harmless error. *See* Dkt. 14, pp. 2-8.

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The step-two determination of whether a disability is severe is merely a threshold determination, raising potentially only a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

The ALJ found that plaintiff had severe impairments, including history of postpartum cardiomyopathy and morbid obesity. AR. 24. Therefore, the ALJ resolved step two of the sequential disability evaluation process in plaintiff's favor and continued on to the next step in the process. *See id*.

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Yuckert, supra*, 482 U.S. at 146. Regarding the establishment of a disability, it is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Yuckert, supra*, 482 U.S. at 146 (quoting 42 U.S.C. § 423(d)(5)(A)) (citing *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

The Court also notes that plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Yuckert, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (citing *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). Any impairment that does not last continuously for twelve months does not satisfy the requirement. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Roberts, supra*, 66 F.3d at 182.

In *Roberts*, the Ninth Circuit found that the decision by the Social Security Administration that plaintiff Roberts "was not disabled due to obesity was supported by substantial evidence because Roberts failed to carry the burden of showing that she met the duration requirement." *Roberts*, *supra*, 66 F.3d at 182. As noted by the court, the "burden requires the claimant to make out a case both that she has an impairment listed in the regulations, and that she has met the duration requirement." *Id.* (citing 20 C.F.R. § 416.920(d)).

Here, plaintiff contends that the ALJ failed to analyze the severity of plaintiff's alleged "congestive heart failure, shortness of breath, acute renal failure, chest pain at rest, chronic systolic heart failure, left ventricular mural thrombus and hypertension." Dkt. 13, p. 6 (citing AR. 254, 255, 282, 349, 401). Defendant argues that when the ALJ discussed plaintiff's severe impairments, the ALJ noted as follows:

> A diagnosis of postpartum cardiomyopathy exists in the record, with symptoms of ongoing shortness of breath, dyspnea on exertion, nocturnal dyspnea, and orthopnea post-partisan, as of July 2013. She experienced mildly intermittent chest pain. Chest x-ray showed cardiomegaly without overt edema. An echocardiogram revealed mildly dilated left ventricular function and severely reduced systolic function with an ejection fraction estimated at 10 percent to 15 percent with two left ventricular thrombi.

Dkt. 14, p. 3 (citing AR. 24-25 (citing AR. 252-336, 351-96, 420)). Regarding plaintiff's alleged severe impairments not noted by the ALJ explicitly as symptoms of plaintiff's postpartum cardiomyopathy ("PPCM"), defendant notes that in July 2013, plaintiff's "repeat chest x-ray showed stable cardiomegaly again without congestive heart failure [and] . . . . [her] constellation of symptoms was thought to be consistent with acute

uncompensated systolic heart failure, most concerning for possible postpartum cardiomyopathy." *Id*. at 4 (citing AR. 256, 276, 282); *see also* AR. 25 (the ALJ also noted this x-ray showing "stable cardiomegaly without congestive heart failure," further noting that plaintiff's "cardiomegaly without congestive heart failure was considered stable") (citing AR. 262). Similarly, defendant notes that plaintiff's symptom of acute renal failure was expected to normalize with treatment, and "does not appear in the record subsequent to [plaintiff] July 2013 hospitalization." *Id.* at 5 (citing AR. 1-522, 263 ("continue diuresis, anticipate Cr [serum creatinine] will normalize with improved LVSF [left ventricular systolic] function"), 271, 282). Finally, regarding plaintiff's alleged severe impairment of hypertension, defendant notes that in December 10, 2013, approximately 5 months after plaintiff's alleged onset date of disability, plaintiff's physician indicated that her hypertension was "well-controlled." *Id.* at 6 (citing AR. 349, 401 (also assessed as well-controlled in December 2014)). Based on the above references to the record, defendant argues that "review of the record does not support [plaintiff's] assertion [regarding severe impairments overlooked by the ALJ], as the alleged additional impairments were either symptoms of July 2013 PPCM, short-term issues/conditions arising from it, or conditions that were well-controlled with treatment." *Id.* at 4 *(citing Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("impairments that can be controlled effectively with medication are not disabling")). Plaintiff did not reply to any of defendant's citations to the record or arguments, as she declined to file a reply. For the reasons discussed both here and in the subsequent section, *see infra*, section 2, the Court concludes that defendant's arguments are persuasive.

Plaintiff's argument regarding the impairments that she alleges that the ALJ overlooked as severe impairments entails a list of the alleged severe impairments, along with citations to the record documenting that they are noted, and a sentence regarding plaintiff's testimony "about the symptoms she experienced because of her impairments, including being so short of breath that she did not feel like she was getting enough air." Dkt. 13, pp. 6-7 (citing AR. 45). In addition to a relatively detailed review of the medical record, some of which the Court has noted above, defendant responds to plaintiff's argument by noting that although plaintiff "states that her own testimony supported her claims, [she] does not dispute the ALJ's finding that her subjective allegations were not reasonably consistent with the medical evidence; thus she has waived the issue." Dkt. 14, p. 6 (internal citation to Dkt. 13, p. 7 (citing AR. 45)) (other citation omitted); *see also* defendant's general discussion, *id.* at pp. 3-8.

For the reasons stated, including defendant's citations to the record noted above, and the record as a whole, including the Court's discussion below, *see infra*, section 2, the Court concludes that defendant's argument that plaintiff's alleged overlooked severe impairments "were either symptoms of July 2013 PPCM, short-term issues/conditions arising from it, or conditions that were well-controlled with treatment" is persuasive and substantiated by the record. For example, although plaintiff's alleged date of disability onset is July 20, 2013, within six months of this date, on December 10, 2013 she reported no shortness of breath (dyspnea). *See* AR. 347. Similarly, as noted previously, her hypertension was well controlled by December 2013, and her symptom of acute renal failure was expected to normalize with treatment, and "does not appear in the record

subsequent to [plaintiff] July 2013 hospitalization." Dkt. 14, p. 5, 6 (citing AR. 263, 401). At her December 10, 2013 appointment, plaintiff described "NYHA Class 1 symptoms," (AR. 347), which involve "no limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea (shortness of breath)." *Classes of Heart Failure*, American Heart Association website, http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp#.WZSur02FNLN (citing the New York Heart Association (NYHA) Functional Classification) (last visited August 21, 2017). Finally, as noted by defendant, heart failure does not mean that the heart has stopped working, but refers to a situation in which "the heart's pumping power is weaker than normal," and plaintiff's ejection fraction is discussed further below, *see infra*, section 2. *See* Dkt. 14, p. 3 (citing http://www.webmd.com/heart-disease/guide-heart-failure#1-2).

      Plaintiff did not meet her burden to demonstrate that the alleged severe impairments are independent severe impairments as defined by the Social Security Act. *See Roberts, supra*, 66 F.3d at 182 (citing 20 C.F.R. § 416.920(d)) (the "burden requires the claimant to make out a case both that she has an impairment listed in the regulations, and that she has met the duration requirement"). Therefore, the Court concludes that there is no harmful legal error at step two, and the ALJ's findings are based on substantial evidence in the record as a whole.

//

//

(2) **Did the Commissioner err in determining that plaintiff did not meet or equal a medical listing?**

Plaintiff contends that the ALJ erred in determining that plaintiff did not meet or equal a medical listing, specifically Listing 4.02. Dkt. 13, pp. 7-8. Defendant contends that there is no error. Dkt. 14, pp. 8-12.

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than twelve months and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), *as modified to render a published opinion by* 2005 U.S. App. LEXIS 3756 (9th Cir. 2005).

A claimant must demonstrate that she medically equals each of the individual criteria for the particular Listing by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.926(a)). A claimant cannot rely on overall functional impact, but must demonstrate that the impairment equals each criterion in the Listing. *Id.*

Plaintiff alleges error regarding Listing 4.02, which includes the following requirements:

4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in **both A and B are satisfied**.
 A. Medically documented presence of one of the following:
  1. **Systolic failure (*see* 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure);** or
  2. Diastolic failure . . . .

AND

 B. Resulting in one of the following:
  1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
  2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (*see* 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (*see* 4.00D4c); or
  3. **Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:**
   **a. Dyspnea, fatigue, palpitations, or chest discomfort**; or
   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (*see* 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
   d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.02 (emphases added).

Plaintiff contends that she meets this Listing because she meets the requirements of paragraph A regarding systolic failure and paragraph B, section 3(a), regarding inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to dyspnea, fatigue, and chest discomfort. This Listing requires meeting both paragraph A and paragraph B requirements. *See id.*

Regarding the paragraph A requirements, plaintiff contends that she demonstrated that she suffers from systolic failure, with "ejection fracture of 30 percent or less during a period of stability." Dkt. 13, pp. 7-8. As noted by plaintiff, the ALJ determined that plaintiff did not meet Listing 4.02 in part because plaintiff's "ejection fraction improved to a range of 35 to 40 percent within six months, above the requirement for the listing." Dkt. 13, p. 7 (citing AR. 25). Although plaintiff contends that this finding by the ALJ is incorrect because in July 2014 plaintiff demonstrated ejection fraction of 10 to 15 percent, this finding of ejection fraction of 10 to 15 percent on the page cited by plaintiff actually is from August 2, 2013. *See id.* (citing AR. 286); *see also* AR. 286. Plaintiff's date of alleged disability onset of July 20, 2013. *See* AR. 22. Therefore, this finding in the record noted by plaintiff does not demonstrate that she met Listing 4.02 and was therefore disabled, as a finding of disability requires impairment for at least 12 months in duration. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Roberts*, *supra*, 66 F.3d at 182.

Next, plaintiff notes that her ejection fraction was estimated at 35 to 40 percent in December 2013, but plaintiff argues that this ejection fraction should not preclude her from meeting the Listing because "this is only an estimate as noted by her doctor [and]

given the closeness of the numbers to the requirement of the listing, it is likely that [plaintiff] meets the paragraph A listing requirements." Dkt. 13, pp. 7-8 (citing AR. 338).

Defendants notes that at her administrative hearing, plaintiff's attorney noted that plaintiff "probably doesn't meet that listing but she comes close." *See* AR. 42. Defendant also notes that by December 2013, as noted by the ALJ, an updated echocardiogram indicated that the left ventricle was mildly to moderately dilated; and that the left ventricular ejection fraction was improved, estimated at 35 to 40 percent. Dkt. 14, p. 10 (citing AR. 25, 338, 400). Defendant argues that plaintiff therefore did not demonstrate the required readings continuing during the period of stability for the required 12 continuous months. *See id*. at 11. Regarding plaintiff's argument that the ejection fraction results are only an estimate, defendant contends that "the ejection fraction results noted throughout the record were for the most part presented as estimates that her treating cardiologists accepted as valid. *Id.* (citing AR. 269, 272, 283, 286, 292, 296, 348). Defendant also contends that plaintiff "provides no authority in support of her implication that the estimates were not reliable indicators of her condition." *Id.* (citing plaintiff's brief, Dkt. 13, pp. 7-8).

Regarding plaintiff's contention that given the closeness of the estimated numbers to the requirement of the Listing that it is likely that she meets the paragraph A Listing requirements, defendant argues that plaintiff's "condition simply did not meet the listing level requirements." *Id*. In support, defendant cites Ninth Circuit case law:

> Listed impairments are purposefully set at a high level of severity because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary . . . . Listed

|   |   |
|---|---|
| 1 | impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered. |
| 2 | |

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebly*, 493 U.S. 521, 532 (1990)). Therefore, "coming close" is not sufficient.

Defendant also argues that plaintiff's contention that she meets the requirements for paragraph B, specifically section 3 (a), which requires an inability to perform an exercise tolerance test, is unpersuasive because "there is no indication, other than her discredited testimony, indicating that she could not perform an exercise tolerance test." Dkt. 14, p. 12 (citing AR. 1-522). Defendant also argues that the pages cited by plaintiff "do not support her assertion, and are not frequent," noting that plaintiff cites records from prior to the alleged onset of disability, and sites other pages that refer only to the month of July 2013. *Id.* (citing AR. 252, 264, 422, 428). Defendant also notes that plaintiff reported no shortness of breath in August 2013. *Id.* (citing AR. 290). Plaintiff has provided no rebuttal to these citations.

Defendant's arguments are persuasive and her citations and characterizations of the record are accurate. The ALJ's finding that plaintiff's ejection fraction was above 30 percent by December 2013 is supported by substantial evidence in the record as a whole. *See* AR. 25, 338. This finding alone is sufficient to support the ALJ's finding that plaintiff failed to meet Listing 4.02, chronic heart failure, as she therefore did not meet requirements of paragraph A. *See* AR. 25; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.02. As noted by defendant, by December 2014, plaintiff's ejection fraction had returned to normal. *See* Dkt. 14, p. 6 (citing AR. 27, 516-19); *see also* AR.

518 (last echo was 12/2014 which showed her EF had returned to normal"). In addition, defendant's arguments that plaintiff also did not establish that she met the requirements of paragraph B, which requires an inability to perform an exercise tolerance test at a workload equivalent to five METs or less due to shortness of breath, fatigue, palpitations, or chest discomfort, also are persuasive. As noted by the ALJ plaintiff denied complaints of chest pain, palpitations, or shortness of breath during follow-up visits between September and December 2013. *See* AR. 27; *see also* AR. 347 ("she is not having issues with edema or shortness of breath"), 348 ("negative for chest pain and exertional chest pressure/discomfort").

Furthermore, by December 2013, cardiologist Dr. Joshua L. Busch M. D. assessed that plaintiff's condition was stable with NYHA class I symptoms. *See* AR. 349. NYHA class I symptoms means that there is "No limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea (shortness of breath)." *See Classes of Heart Failure*, American Heart Association website, http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp#.WZSur02FNLN (citing the New York Heart Association (NYHA) Functional Classification) (last visited August 21, 2017).

For the reasons stated and based on the record as a whole, the Court concludes that plaintiff did not establish that her impairments met or medically equaled Listing 4.02. The Court also concludes that plaintiff has not demonstrated that the ALJ committed any harmful legal error when evaluating whether plaintiff's impairments met or medically equaled a Listing at step three of the sequential disability evaluation procedure.

(3) **Did the Commissioner err in evaluating plaintiff's residual functional capacity ("RFC")?**

Although plaintiff contends that the ALJ erred when determining her RFC, plaintiff's argument regarding her RFC depends on her previous argument that the ALJ did not take into consideration all of plaintiff's severe impairments, again noting plaintiff's allegations. *See* Dkt. 13, p. 9. The Court already has addressed this argument and found it unpersuasive. *See supra*, section 1. As argued by defendant, "a claimant does not establish that an ALJ's RFC determination is incorrect by simply restating her arguments that the ALJ improperly discounted certain evidence, when the record instead demonstrates the ALJ did not improperly reject that evidence." Dkt. 14, p. 13 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008)).

**(4) Did the Commissioner err because the decision is not supported by substantial evidence?**

Similarly, although plaintiff contends that the ALJ's decision is not supported by substantial evidence, this argument by plaintiff explicitly is "based on the above arguments and review of the record . . . ." Dkt. 13, p. 10. The Court already has addressed the "above arguments" and has concluded that they are not persuasive.

CONCLUSION

Although plaintiff contends that the ALJ failed to consider severe some of her alleged impairments, she failed to demonstrate that the alleged severe impairments were distinct medically determinable impairments lasting at least a year in duration. Similarly, plaintiff failed to demonstrate that her ejection fraction was below 30% continuously for a year in duration.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 24th day of August, 2017.

J. Richard Creatura
United States Magistrate Judge